# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

ROBERT EUGENE JOHNSON
ADC#78181                                                                                          PETITIONER

VS.                             5:12CV00370 KGB/JTR

RAY HOBBS, Director,
Arkansas Department of Correction                                                    RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the United States District Judge, you must, at the same time that you file your written objections, include a "Statement of Necessity" that sets forth the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence to be proffered at the requested hearing before the United States District Judge was not offered at the hearing before the Magistrate Judge.

3. An offer of proof setting forth the details of any testimony or other evidence (including copies of any documents) desired to be introduced at the requested hearing before the United States District Judge.

From this submission, the United States District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Room A149
> Little Rock, AR 72201

## I. Background

Pending before the Court is a § 2254 Petition for a Writ of Habeas Corpus filed by Petitioner, Robert Eugene Johnson ("Johnson"). *Doc. 2*. Before addressing

Petitioner's habeas claims, the Court will review the procedural history of the case in state court.

On June 17, 2009, a Pulaski County jury convicted Petitioner of: (1) possession of cocaine with intent to deliver; and (2) resisting arrest. *Doc. 9-2*. He received an aggregate 40-year sentence as a habitual offender. *Id.*

Johnson appealed to the Arkansas Court of Appeals. His sole argument was that the trial court erred by instructing the jury that flight could be considered as evidence of guilt. On October 6, 2010, the Court affirmed. *Johnson v. State*, 2010 Ark. App. 669, 2010 WL 3902706 (2010).

Following his direct appeal, Johnson did not pursue any postconviction relief in state court.

On September 24, 2012, Johnson initiated this habeas action. *Doc. 2*. In his Petition, he argues that: (1) the prosecution withheld impeachment evidence from the defense in violation of *Brady*; and (2) his lawyer was ineffective for failing to adequately investigate his case to obtain the impeachment information. *Id.* According to Respondent, Ray Hobbs, all of Johnson's habeas claims are: (1) barred by the statute of limitations; and (2) procedurally defaulted. *Doc. 9*.

For the reasons discussed below, the Court recommends that this habeas action be dismissed, without prejudice, so that Johnson can exhaust his *Brady* claim in state court.

## II. Discussion

**A. The State's Failure to Disclose LRPD Officer Josh Hastings' Disciplinary Records, As *Brady* Material, Prior to Johnson's Trial**

During Johnson's trial, Little Rock Police Officer Josh Hastings ("Hastings") testified that, on June 9, 2008 at around 1:30 a.m., he responded to a call at 11th Street in Little Rock. *Doc. 9-8 at 16*. When Hastings arrived on the scene, he saw three African-American men standing in the street near a pickup truck. One of the men, Johnson, turned and saw Hastings. According to Hastings, Johnson threw a plastic baggie under a pickup truck and fled on foot. *Doc. 9-8 at 16*. Hastings chased Johnson and took him into custody after a "small altercation." *Doc. 9-8 at 17*.

Hastings testified that he directed Chad O'Kelley, another LRPD officer who had arrived on the scene, to search the area under the pickup truck.[1] Hastings then walked the path where Johnson had fled from him, and found $185 in cash on the ground. *Doc. 9-8 at 17-18*. In one $20 bill Hastings found a small rock of cocaine. *Doc. 9-8 at 18*. According to Hastings, Johnson spontaneously stated "make sure you get my money" when he was taken into custody. *Doc. 9-8 at 21*.

Johnson elected not to testify at trial or present any witnesses. However, in

---

[1] O'Kelley did not offer any testimony about seeing Johnson throw a baggie underneath a pickup truck. O'Kelley testified that, when he arrived at the scene, he saw Hastings chasing Johnson. *Doc. 9-8 at 57*. O'Kelley assisted Hastings in subduing Johnson. O'Kelley was then directed by Hastings to search under a pickup truck, where he found a baggie that contained crack cocaine. *Doc. 9-8 at 59*.

his habeas papers, he states that, at the time of his arrest, he *knew* that Hastings had a reputation for unlawfully targeting African-Americans:

> On June 9, 2008, Petitioner was enjoying the day by fellowshipping with friends on a street in Little Rock when they noticed [police officers] approaching. Talk on the street was that there was a young officer working this area who is the son of Lt. Terry Hastings, the then spokesman for the Little Rock Police Department. Everyone knew that Josh Hastings, [Lt. Terry Hastings'] son, was a racist and a bully who was systematically targeting blacks for arrest and unjustified and unreported beatings. It was said that [Josh] Hastings was getting away with this behavior because his father was pulling strings and calling on favors. People were scared of Officer [Josh] Hastings.

*Doc. 2 at 2-3*.

In his habeas papers, Johnson alleges that Hastings stopped him on the street, held out some "contraband," and asked him: "What's this?" *Doc. 2 at 3*. Johnson denied knowing anything and turned to leave. Hastings was then joined by O'Kelley, and the two officers beat Johnson. *Id.* After the beating, he was handcuffed and placed in a patrol car. During the ride to jail, Hastings told Johnson that he would be charged with possessing the crack cocaine that Hastings had brought with him unless Johnson agreed to become an informant. Johnson declined and Hastings told him "to keep his mouth shut about the incident or suffer consequences of which Petitioner had no doubt Hastings would make good on."

Johnson claims that, although he told his trial counsel about what happened, his lawyer said that Hastings "had some very powerful friends," and that Johnson

should "keep his mouth shut and he would keep him from receiving a life sentence." *Doc. 2 at 7*.

Johnson goes on to state that he did not have the "courage to come forward" until September of 2012, when "the activities of Officer Hastings . . . made the news." *Doc. 2 at 4*. Johnson refers to an incident, which occurred on August 12, 2012, where Hastings shot and killed a fifteen-year-old African-American while investigating a car break-in at an apartment complex. Hastings was subsequently charged with manslaughter. The resulting trials were highly publicized in central Arkansas.[2]

Johnson has submitted various newspaper articles published in 2012 that reported on Hastings' LRPD disciplinary record. Hastings was hired by the LRPD sometime in 2007. According to the newspaper articles, since 2008, Hastings was: (1) "named in at least 18 [disciplinary] complaints . . . ;" and (2) "at least six [of the 18 complaints] were sustained, resulting in 34 days of missed work spread over six suspensions[.]" *Doc. 2 at 12-14*. Supervisors complained that Hastings was "insubordinate, showed a 'reckless' disregard for public safety, damaged department property, used profanity, missed court dates, slept on the job and lied to other officers." *Doc. 2 at 14*.

---

[2] Hastings was tried twice. Both trials ended in hung juries. *See generally State v. Hastings*, Pul. Co. Cir. Ct. No. CR 13-224, available online at: http://www.pulaskiclerk.com. Prior to Hastings' third trial, the state *nolle prossed* the case.

6

In late 2012, Hastings was fired by the LRPD for "serious misconduct." *Doc. 4 at 6*. Hastings' violations included "conduct unbecoming an officer or neglect of duty" and being "untruthful" "during interviews with internal investigators." *Doc. 4 at 6.*

Johnson appears to argue that *all* of Hastings' LRPD disciplinary records constitute *Brady* material that could have been used at his trial to impeach Hastings' testimony. Johnson maintains that he did not discover the "factual predicate" of his habeas claims until September of 2012, when he read the newspaper articles about Hastings.[3] He also argues that Hastings' disciplinary history establishes his "actual innocence," thus excusing any procedural default or untimely filing.[4]

Virtually all of the evidence supporting Johnson's conviction for possessing cocaine came from Hastings' testimony. Viewed in that light, some of the charges in Hastings' disciplinary history, *e.g.* "lying to other officers" and being

---

[3] In most habeas cases, the one-year limitations period is triggered by the conclusion of direct review in state court under § 2244(d)(1)(A). However, the triggering date may also be the later of "the date on which the factual predicate of the claims could have been discovered through the exercise of due diligence." *See* 28 U.S.C. § 2244(d)(1)(D).

[4] In portions of Johnson's habeas papers, he appears to assert his "actual innocence" as a substantive habeas claim. While a petitioner's "actual innocence" may allow a federal court to consider the merits of an untimely or procedurally defaulted habeas claim, a freestanding claim of "actual innocence" does not state a substantive claim for habeas relief in a noncapital case. *See Burton v. Dormire*, 295 F.3d 839, 848 (8th Cir. 2002) ("we have squarely rejected the notion that a prisoner may receive a writ simply because he claims he is innocent"); *Whitby v. Dormire*, 2 Fed. Appx. 645, *1 (8th Cir. 2001) (table) (a non-capital habeas petitioner "presented the District Court with a free-standing claim of actual innocence based on newly discovered evidence. The District Court correctly ruled that such a claim is not cognizable in a federal habeas proceeding.").

"untruthful" in interviews, might constitute "impeachment material" under *Brady*.[5] While the majority of Hastings' reported disciplinary violations appear to have occurred *after* Johnson's June 17, 2009 trial, the state arguably may have been required to disclose to Johnson's attorney any *Brady* material in Hastings' disciplinary records, to the extent it existed, up to and including the date of Johnson's trial.

Respondent argues that Johnson's habeas claims are untimely and in procedural default. Respondent points out that Johnson never pursued any postconviction relief in state court. Respondent also argues that, because Johnson admits that he knew Hastings had a reputation as a "bad cop" at the time of his arrest, he knew the "factual predicate" for his habeas claims prior to trial, and "almost certainly could have gotten access before trial (when he was not incarcerated) to any unsolicited complaints made against Hastings and records forming the basis for any suspension, if then final, through Arkansas's Freedom of Information Act." *Doc. 9 at 5*.

---

[5] *See e.g. Milke v. Ryan*, 711 F.3d 998, 1002 (9th Cir. 2013) (holding that the disciplinary file of an officer whose testimony was the sole basis for convicting the defendant contained *Brady* material – including a "five-day suspension for taking 'liberties' with a female motorist and then lying about it to his supervisors; four court cases where judges tossed out confessions or indictments because [the officer] lied under oath; and four cases where judges suppressed confessions or vacated convictions because [the officer] had violated the Fifth Amendment or the Fourth Amendment in the course of interrogations."); *United States v. Tutt*, 2013 WL 5707791, *3 (E.D. Mich. 2013) (ordering an *in camera* review of an officer's disciplinary record for *Brady* material where he had provided a contradictory account of the facts in a civil case – "[t]here may be evidence in [the officer's] personnel and internal disciplinary files . . . that shed light on the issue of his character for truthfulness"); *compare with United States v. Hoyle*, 751 F.3d 1167, 1171 (10th Cir. 2014) (disciplinary letter received by police officer was not *Brady* impeachment evidence because it did not relate to the officer's "truthfulness" or "honesty").

Before reaching the merits of those arguments, the Court must first decide whether Johnson has exhausted his habeas claims in state court.

B.  **Johnson's Exhaustion of his Available State Court Remedies**

Exhaustion of state court remedies is a prerequisite to federal habeas relief under 28 U.S.C. § 2254(b). Exhaustion may be raised *sua sponte*. *See McCartney v. Vitek*, 902 F.2d 616, 617 (8th Cir. 1990). "When a state court remedy is available for a state prisoner's unexhausted claim, the federal habeas court must defer action until the claim is exhausted, either by dismissing the federal petition without prejudice or by using the 'stay and abeyance' procedure described in *Rhines v. Weber*[.]" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005).

Because Johnson did not pursue any postconviction relief in state court, he did not exhaust either of his habeas claims. As to his unexhausted "ineffective assistance of counsel claim," there is no doubt that his return to state court to assert that claim in a Rule 37 action would be futile. Following the conclusion of his direct appeal, Johnson had sixty days from the appellate mandate to initiate a Rule 37 action raising an ineffective assistance of counsel claim. *See* Ark. R. Crim. P. 37.2(c)(ii). He failed to do so.

However, as to his *Brady* claim, Johnson may still file a timely petition in the Arkansas Supreme Court requesting that the trial court be reinvested with jurisdiction to consider a writ of error coram nobis. The state's "failure to disclose

evidence favorable to the defense in violation of *Brady*, if established, is cause to grant the writ of [error coram nobis]." *McArthur v. State*, 2014 Ark. 367, 439 S.W.3d 681 (2014). Moreover, there is no specific time limit for seeking a writ of error coram nobis – instead a petitioner is required to demonstrate "due diligence" in applying for coram nobis relief. *See Weekly v. State*, 2014 Ark. 365, 440 S.W.3d 341 (2014).

In a footnote, Respondent asserts that the "extraordinary" nature of the writ of error coram nobis places it outside of Arkansas' "established appellate review process," and that Johnson "need not have pursued the writ [of error coram nobis] in order to have exhausted his state-law remedies on his *Brady* claim." *Doc. 7 at p.7 n.4*. In support of this argument, Respondent cites only *Dixon v. Dormire*, 263 F.3d 774, 777 (8th Cir. 2011), holding that Missouri prisoners must seek discretionary review from the Missouri Supreme Court, following an affirmance of their convictions by the Missouri Court of Appeals, in order to exhaust their habeas claims.

In *Dixson*, the Court based its holding on *O'Sullivan v. Boerckel*, 526 U.S. 847 (1999), which established that habeas petitioners are not required to file "repetitive petitions" in state court, and that they "do not have to invoke extraordinary remedies when those remedies are alternatives to the standard review process and where the state courts have not provided relief through those remedies

in the past." *O'Sullivan*, 526 U.S. at 844. The rule of comity "dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." *Id.* Thus, the Court "conclud[ed] that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845.

While the Arkansas Supreme Court has characterized a writ of error coram nobis as "an extraordinary remedy that is rarely granted," *see Mills v. State*, 2009 Ark. 428, 2009 WL 3162293 (Ark. Oct. 1, 2009) (unpublished), such a writ remains the *clearly prescribed mechanism* for raising a postconviction *Brady* claim under Arkansas law.[6] Significantly, "a [*Brady*] claim of material evidence withheld by the prosecutor . . . is not cognizable under Rule 37[.]" *Howard v. State*, 2012 Ark. 177, *17, 403 S.W.3d 38, 49 (2012); s*ee also Collier v. State*, 2004 WL 584903, *2 (Ark. 2004) (unpublished) ("It was not appropriate for appellant to raise his *Brady* claim in his Rule 37 petition."). Thus, as a matter of comity, the

---

[6] Numerous cases recognize that a postconviction *Brady* claim, based on either exculpatory or impeachment evidence, is cognizable in a coram nobis proceeding. *See, e.g. Smith v. State,* 2012 Ark. 403, 2012 WL 5304089 (2012) ("petitioner has not shown that any specific inconsistency between the [allegedly withheld] pre-trial statements and the testimony was substantial enough to impeach the victims' testimony that they had been raped almost daily beginning at a very young age. Petitioner has not demonstrated a *Brady* violation that warrants issuance of a writ of error coram nobis."); *Cloird v. State*, 357 Ark. 446, 182 S.W.3d 477 (2004) (affirming the denial of coram nobis relief on the petitioner's postconviction coram nobis claim – noting that the DNA evidence at issue would not have "exonerated [the defendant] or impeached the victim"); *State v. Larimore*, 341 Ark. 397, 17 S.W.3d 87 (2000) (affirming the trial court's grant of coram nobis relief on a *Brady* claim - "we note that the evidence concealed was favorable to appellee both because it was exculpatory and because it was impeaching").

Arkansas Supreme Court should have "one full opportunity" to review Johnson's *Brady* claim.[7] *See Buckley v. State*, 2010 Ark. 154, *5 n.2, 2010 WL 1255763, **2 (Ark. Apr. 1, 2010) (reinvesting jurisdiction in the trial court to consider a possible *Brady* violation on a writ of error coram nobis – "As a matter of comity, the federal court declined to review petitioner's *Brady* claim . . . until this court had the opportunity to review the claim and correct any error.").

Finally, under the AEDPA, a district court has discretion to stay and abey a "mixed" habeas petition containing both exhausted and unexhausted claims while a petitioner returns to state court to exhaust his unexhausted claims. In *Rhines v. Weber*, 544 U.S. 269, 278 (2005), the Court held that habeas petitions may be stayed, rather than dismissed, "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." In this case, because Johnson never presented his habeas claims in state court, it does not present a mixed petition of exhausted and unexhausted claims. Thus, the *Rhines* factors do not weigh in favor of a stay.

---

[7] Johnson has filed a motion requesting that Respondent be compelled to produce "all information concerning Officer Hastings from the Little Rock Police Department, including . . . all complaints, official suspension[s], and internal affairs reports, and all document[s] pertaining to Hastings ability to tell the truth." *Doc. 20 at ¶5*. Comity also dictates that the state court should have the first opportunity to consider whether the factual record should be further developed concerning Johnson's *Brady* claim. *See Buckley v. State*, 2010 Ark. 154, *5 n.2, 2010 WL 1255763, **2 (Ark. Apr. 1, 2010) (remanding to the trial court to consider a writ of error coram nobis to include an evidentiary hearing in a case concerning impeachment evidence allegedly withheld about the "key witness" in the petitioner's trial). Thus, the Court will enter a separate Order denying the Motion, without prejudice, so that the state courts can have an opportunity to consider and decide this issue.

For the foregoing reasons, the Court recommends that this habeas action be dismissed, without prejudice. Johnson should promptly file a petition in the Arkansas Supreme Court requesting that it reinvest jurisdiction in the trial court to consider a writ of error coram nobis addressing Johnson's *Brady* claim. In the event that he is denied coram nobis relief, he may refile this habeas action.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT this habeas action be DISMISSED, WITHOUT PREJUDICE. IT IS FURTHER RECOMMENDED THAT a Certificate of Appealability be DENIED pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases.

DATED this 17th day of December, 2014.

_____
UNITED STATES MAGISTRATE JUDGE